**LEE TELEPHONE COMPANY,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 7676.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 13, 1958.

Decided Oct. 16, 1958.

Pasquale J. Di Quinzio, Philadelphia, Pa. (George Craven, Kenneth W. Gemmill and Converse Murdoch, Philadelphia, Pa., on brief), for petitioner.

Arthur I. Gould, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attorneys, Department of Justice, Washington, D. C., on brief), for respondent.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and BARKSDALE, District Judge.

HAYNSWORTH, Circuit Judge.

■ There is abundant support for the Tax Court's conclusion that the peti-

tioner's payments to preferred stockholders in the years 1951 through 1953 were actually, as well as in form, dividends upon stock and not interest, and, therefore, were not deductible in computing taxable income.

The petitioner is a telephone company operating in Virginia and North Carolina, and is subject to regulation in both states. In 1949, the taxpayer was in need of additional funds with which to finance its expanding business. Its ratio of debt to net worth had grown beyond the limits ordinarily imposed upon utilities by the Virginia State Corporation Commission. That Commission urged, if it did not insist, that further financing be arranged through stock issues until the ratio of debt to net worth was reduced to approximately 50 per cent. The taxpayer thereupon undertook to place an issue of preferred stock, since all of its common stock was owned by one individual who was very anxious to maintain his exclusive control. Through a broker, arrangements were made with Jefferson Standard Life Insurance Company to take $500,000 of a new preferred stock, provided that certain terms and conditions it suggested were adopted. A contract was entered into between the parties, pursuant to which the taxpayer's charter was amended to permit the issuance of the preferred stock, having specified terms. Thereafter, the Board of Directors of the taxpayer adopted appropriate resolutions, pursuant to which the stock was actually issued. As issued, the stock is 5 per cent cumulative preferred stock, but contained a provision for a sinking fund.

█ The original contract between the taxpayer and Jefferson Standard Life Insurance Company provided for contributions by the taxpayer to a sinking fund of $15,000 each year, which should be used to retire preferred stock. The charter provides that contributions to the sinking fund shall be made out of "net profits or surplus of the corporation," though the contract and the later resolutions adopted by the taxpayer's Board of Directors are silent as to the

source of funds from which such sinking fund obligations shall be met. Of course, the charter provision is controlling, though the taxpayer contends that the provisions of the contract, which seem to it to require that such payments to the sinking fund be made whether or not there was a net profit or surplus, is indicative of the true intention of the parties.

█ In modern corporate practice, securities are frequently issued containing provisions formerly thought characteristic of other types of securities. Subordinated debentures frequently have attributes of preferred stock and preferred stock issues sometimes contain provisions found typically in bonds or debentures. In such a case when the issue arises and it is necessary for the Court to determine whether particular payments are interest and deductible by the payor in computing its income taxes, or dividends, and, therefore, nondeductible by the payor, it is necessary to look at all of the terms and provisions of the particular security, the purpose for which it was issued, the surrounding circumstances and the general intention of the parties. The presence or absence of a particular provision rarely can be held controlling and conclusive, and the security and all payments thereon must be finally characterized after it has been viewed in all of the light which the scene affords.

Because of the technical uncertainty that there would be earnings out of which contributions to the sinking fund could be made, it is an exaggeration to say that these securities had a fixed maturity date, but it is quite true that they had a fixed maturity in the practical contemplation of the parties. A precisely fixed maturity date is strongly indicative of a debtor-creditor relationship, but the securities here have other terms and provisions which give them a coloration inconsistent with such a relationship.

Perhaps most important of all, the taxpayer, seeking to comply with applicable financial regulations, sought to place a preferred stock issue, to decrease, rather

than increase, the ratio of its debt to its net worth. The attorney for the taxpayer testified that at the time the taxpayer could have borrowed the money at 3 per cent, but the preferred stock was issued at the higher dividend rate because of the requirement of the regulatory commission. While the dividends are cumulative (a provision found in most preferred stock issues where the rate of the dividend is limited) they are payable only out of earnings, if and when declared by the board of directors. If dividends are in arrears for as much as eighteen months, the holders of the preferred stock had the right to vote and to elect a majority of the members of the board of directors, but still no right to accelerate any debt or even to maintain an action for the dividend arrears. Under its terms, the preferred stock is to be preferred in liquidation to the common stock, but clearly it is subordinated to the claims of all creditors. Indeed, except for the presence of the sinking fund provisions, the terms and conditions of the preferred stock are all entirely appropriate to, and characteristic of, an issue of that class. The parties so labeled it and the taxpayer has carried its proceeds upon its balance sheet as part of its net worth, and dividend payments have been entered as such upon its books.

Under these circumstances, after the taxpayer had sought to deduct the dividend payments upon the preferred stock as interest, the Tax Court held that the preferred stock was in fact equity capital, and that the dividend payments were not deductible. For the reasons more fully stated by the Tax Court in its opinion [1] and in view of all of the circumstances briefly outlined above, we agree with its conclusion.

The taxpayer particularly urges upon us an earlier decision of the Tax Court in Choctaw, Incorporated, Tax Court Docket 36173, 12 CCH T.C.M. 1393; 22 P-H Memo TC, Par. 53,397. Even if that case were controlling authority, there are distinguishing features which justified the Tax Court in reaching a different result here from that in Choctaw. The essential provisions of the security involved in Choctaw were substantially the same as those here, except that the security in Choctaw contained more elaborate covenants on the part of the issuer, defined events of default at length, provisions sounding much like those of a debenture, but the only sanction there as here was the transfer of voting control. It was found in Choctaw that the issuer sought to place a mortgage loan and the purchaser was wholly uninterested in purchasing stock, but was interested in a loan to be amortized over a 20-year period, except as amortization might be accelerated by a formula requiring additional payments depending upon net profits. It is not clear why they then decided to label this security preferred stock and to cast it generally in that form, but the clearly apparent purpose of the parties to that transaction was enough to tilt the scale in favor of a finding that the payments there were really interest. The very different purpose of the issuer here, with all the other circumstances, abundantly justifies the finding that the dividend payments here were in fact dividends and not interest.

Little help can be derived from such cases as Helvering v. Richmond, F. & P. R. Co., 4 Cir., 90 F.2d 971, where the issuer pledged its assets to guarantee its preferred stock, making the preferred stockholders, in effect, first mortgagees of the issuer's assets. United States v. Title Guarantee & Trust Co., 6 Cir., 133 F.2d 990, is not unlike our present situation, and the sinking fund provisions here would give us more trouble if we accorded the matter of a fixed maturity date the almost controlling significance that Judge McAllister found in them. A majority of that Court did not find that such conclusive weight should be given those provisions, nor do we; but, considering in their entirety the provisions of the security here and the attendant

---

1. T.C. Memo 1957–230.

circumstances, we have satisfied ourselves that the payments were properly treated by the Tax Court as dividends on preferred stock. Commissioner v. Meridian & Thirteenth Realty Co., 7 Cir., 132 F.2d 182; Pacific Southwest Realty Co. v. Commissioner, 9 Cir., 128 F.2d 815.

Affirmed.