**R. C. OWEN COMPANY**
v.
**UNITED STATES of America.**
**No. 390–57.**

United States Court of Claims.

Feb. 3, 1960.

William Waller, Nashville, Tenn., for plaintiff. Waller, Davis & Lansden, Nashville, Tenn., were on the brief.

Jack F. Blair, Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., for defendant. Abbott M. Sellers, James P. Garland and M. Carr Ferguson, Washington, D. C., were on the brief.

BARKSDALE, District Judge, sitting by designation.

This is a suit for the recovery of income taxes, in the amount of $43,680.00 claimed by R. C. Owen Company, a Tennessee corporation, to have been erroneously assessed and collected from it. The Commissioner of Internal Revenue determined that plaintiff was not entitled to deductions claimed and taken in each of three fiscal years, 1953, 1954 and 1955, as interest paid on certain of its securities called debentures, because the so-called debentures did not represent bona fide indebtedness, and the payments made thereon were not deductible as interest. The sole question involved in this case is whether or not this determination by the Commissioner was correct.

So far as pertinent, the applicable statutes are as follows:

Internal Revenue Code of 1939, Sec. 23.

"Deductions from gross income. In computing net income there shall be allowed as deductions: * * * (b) *Interest.* All interest paid or accrued within the taxable year on indebtedness, * * * " 26 U.S.C. 1952 ed., § 23.

Internal Revenue Code of 1954, Sec. 163.

"Interest (a) *General rule.*— There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." 26 U.S.C. 1952 ed., Sup. II, § 163.

The plaintiff corporation was organized on October 19, 1946, to acquire, and on December 1, 1946, did acquire, the family partnership of R. C. Owen, Manufacturers of Tobacco, the partners being R. C. Owen and his two sons, R. C. Owen, Jr., and Roy Owen. The interest of the father in the partnership was 72% and that of the two sons was 14% each. In return for the business and assets of the partnership, the corporation issued to the partners 35,000 shares of common stock of the par value of one dollar per share and $800,000.00 of debentures, the stock and debentures being issued to the partners in exactly the same proportion as their interests had been in the partnership. The debentures were expressly subordinated and secondary to all indebtedness incurred by the corporation, there being the recital in the debentures that:

"By the acceptance of this Debenture Bond, the holder hereof, for himself and all subsequent holders expressly agrees that this Debenture Bond shall be subject and secondary to any and all indebtedness incurred by R. C. Owen Company, to banks or to others in the ordinary course of business. This subordination shall cease when surplus equals the amount of these Debenture Bonds."

There is also the following somewhat ambiguous provision:

"Any and all provisions and agreements of this Debenture Bond, insofar as they affect the holders hereof, may be changed, altered, or amended by a vote in writing of the holders of these Debenture Bonds holding seventy-five percent of the principal amount thereof. To accomplish this, a writing shall be executed, signed by at least seventy-five percent of the holders and filed with the Company, and thereupon, the Company is authorized and empowered to execute new Debenture Bonds in exchange for the outstanding Debenture Bonds, with the alterations or amendments as provided in said instrument."

The debentures also contained the following provision:

"In the event R. C. Owen Company fail to pay interest on this Debenture Bond when due, or commit any other event of default here-

inabove set out, then and in such event, and after thirty (30) days' notice in writing to the Company, of the existence of the default, the holders of 75% in amount of Debenture Bonds then outstanding may declare the entire series of Debenture Bonds due and payable by a notice in writing to the Company, and such declaration shall mature all outstanding Debenture Bonds, with the same effect as if they had matured by lapse of time."

There has been no default, as all payments on the debentures have been made when due. However, no dividends were ever paid on the common stock.

In November 1947, after the corporation had been functioning for a year, R. C. Owen, Chairman of the Board of Directors, made an exchange with the two sons, giving 4,000 shares of the one dollar par value common stock to each in return for $4,000.00 of debentures from each son. On December 1, 1947, R. C. Owen transferred his remaining 17,200 shares of stock to trustees for the benefit of his six children, filing a gift tax return representing that the shares of stock were valued at one dollar per share, their par value. The trust deed was irrevocable and by it R. C. Owen completely divested himself of voting rights and all other control of this stock. After this transaction, R. C. Owen owned $584,000.-00 of the $800,000.00 of debentures, but he owned no stock whatever. Nevertheless, he continued to serve as chairman of the board of directors of the corporation.

Balance sheets of the partnership and of the corporation will appear later in our formal findings of fact, but it is noteworthy that the balance sheet of the corporation as of December 1, 1946, without including anything for good will, shows assets of $1,090,245.26, including inventories of $581,602.63 (principally raw tobacco), and fixed assets of $300,-836.31, current liabilities of $255,245.-26, together with funded debt (the so-called debentures here in controversy) of $800,000.00, with equity capital of only $35,000.00 consisting of the 35,-000 shares of one dollar par value stock.

The Commissioner determined that the so-called debentures issued by the plaintiff corporation were not evidences of bona fide indebtedness, but were actually contributions to the corporation's capital. Under all the circumstances, it is our conclusion that the Commissioner's determination was correct. The general rule was well stated in Lee Telephone Co. v. Commissioner, 4 Cir., 260 F.2d 114, 115, as follows:

"In modern corporate practice, securities are frequently issued containing provisions formerly thought characteristic of other types of securities. Subordinated debentures frequently have attributes of preferred stock and preferred stock issues sometimes contain provisions found typically in bonds or debentures. In such a case when the issue arises and it is necessary for the Court to determine whether particular payments are interest and deductible by the payor in computing its income taxes, or dividends, and, therefore, nondeductible by the payor, it is necessary to look at all of the terms and provisions of the particular security, the purpose for which it was issued, the surrounding circumstances and the general intention of the parties. The presence or absence of a particular provision rarely can be held controlling and conclusive, and the security and all payments thereon must be finally characterized after it has been viewed in all of the light which the scene affords."

The Supreme Court had this subject for consideration in the case of John Kelley Company v. Commissioner, 326 U.S. 521, 698, 66 S.Ct. 299, 90 L.Ed. 278 with which the case of Talbot Mills v. Commissioner was considered and decided. The facts in the two cases were somewhat similar, but there were important differences. The court held that, under all the circumstances, the annual payments on the securities in the Kelley case

should be considered as interest on indebtedness, and the annual payments on the securities in the Talbot Mills case should be considered as dividends and not interest. In both cases, the corporate taxpayers had labeled the securities in question as evidences of debt. In the Kelley case, the securities were called "income debenture bearer bonds", and in the Talbot Mills case, the securities were called "registered notes". The court said (326 U.S. at page 530, 66 S.Ct. at page 304):

> "The documents under consideration embody elements of obligations and elements of stock. There is no one characteristic, not even exclusion from management, which can be said to be decisive in the determination of whether the obligations are risk investments in the corporations or debts. So called stock certificates may be authorized by corporations which are really debts, and promises to pay may be executed which have incidents of stock."

It is true that the securities here under consideration have some of the indicia of evidences of debt. The securities are denominated as debentures, they have a fixed interest rate, and a fixed maturity date. However, they have numerous other characteristics more indicative of contributions to capital, i. e., capital stock. In the first place, no money was loaned to the corporation by the recipients of debentures nor did the partners pay anything to the corporation for the debentures. They were issued to the partners in precisely the same proportion as their respective interests in the partnership. No preferred stock was issued. The debentures were specifically made "subject and secondary to any and all indebtedness incurred" by the corporation, a characteristic of common stock. The holders of the debentures acquired certain voting rights not ordinarily characteristic of debentures. For instance, in the event of default by the corporation, only upon the vote of 75%

in amount of the debentures can the debentures be declared due and payable.

Also, there is the specific provision that "all provisions and agreements" of the debentures, "insofar as they affect the holders hereof, may be changed, altered or amended by a vote in writing by the holders of these Debenture Bonds holding 75% of the principal amount thereof." There follows a provision that, following notification of a vote for a change or alteration, the "Company is authorized and empowered" to issue new debentures embodying the change. At the least, these provisions give certain important voting rights to the debenture holders. Although it may be that the entire provision only empowers 75% in amount of the debenture holders to make changes and alterations with the agreement of the corporation, it might well be contended that, by an affirmative vote of 75% in amount of the debenture holders, the provisions of the debentures may be changed at will, even to the extent of increasing the interest rate or accelerating the maturity. If such be the case, the holders of the debentures would have almost as much control of the corporation as common stockholders.

Exclusion from control of the affairs of the corporation is an important factor to be considered. Other than as suggested above, the debenture holders, by the terms of the debentures, are excluded from control. However, it seems most noteworthy that the father, R. C. Owen, principal owner of the business, after he had completely divested himself of his holdings of stock by the execution of the trust deed in December 1947, continued to be chairman of the board of directors, although he only owned debentures and no stock at all. So it would seem that, by the terms of the debentures, R. C. Owen, as holder thereof, was excluded from control, but actually, he was very much in control, although his entire stake in the business was in the form of debenture ownership.

Without undertaking to state precisely what the debt to equity ratio was in the capitalization of the corporation, it is

obvious that equity capital of $35,000.00 is entirely disproportionate in a business with a funded debt of $800,000.00 and current liabilities of $255,245.26.

Although the company prospered during the years in question, it appears that no dividends were ever paid on the common stock, the returns to the owners of the business being in the form of interest on the debentures.

Under all the circumstances, it seems clear to us that the $800,000.00 represented by so-called debentures, in the formation of the corporation, definitely constituted contributions to capital, or capital investments on the part of the partners, rather than indebtedness. Hence, the periodic payments to the debenture holders were not deductible as interest on indebtedness, and plaintiff's petition must be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.