GENESCO, INC.

*v.*

G. HILTON BUTLER, Commissioner, etc.

377 S.W.2d 933.

(*Nashville,* December Term, 1963.)

Opinion filed April 8, 1964.

KENNETH L. ROBERTS, of counsel, WALLER, LANSDEN & DORTCH, Nashville, for appellant.

88

GEORGE F. McCANLESS, Attorney General, MILTON P. RICE, WALKER T. TIPTON, Assistant Attorneys General, for appellee.

MR. CHIEF JUSTICE BURNETT, delivered the opinion of the Court.

This is a suit filed by complainant, Genesco, Inc., a Tennessee corporation, to recover Tennessee Excise Taxes and interest in the amount of $30,676.18 paid to the State under protest. The Commissioner of Revenue has appealed from the holding of the Chancellor that the complainant is entitled to the recovery sought.

The hearing below was on bill, answer, stipulations and exhibits thereto, and disclosed the following facts. In 1945, Genesco established a Retirement Plan for its employees. To implement this Plan, it set up an Employees Retirement Trust. Under the provisions of the Retirement Plan, contributions to the Trust were to be made solely by the Corporation in a manner and an amount as the Corporation might from time to time determine. There was no legal obligation on the Corporation to make

contributions and the Corporation expressly reserved the right to discontinue the contributions at any time. In furtherance of this Plan, Genesco contributed certain land and factory buildings to the Trust in its fiscal years 1951, 1952, 1953 and 1957. When the contributions were made, the aggregate depreciated cost of these properties amounted to $257,693.00 while their aggregate fair market value was $1,442,650.00.

In preparing and filing its Excise Tax Returns for the fiscal years mentioned, Genesco included among its deductions the fair market value of the property contributed to the Trust in each of its fiscal years. In a letter dated December 1, 1959, the then Solicitor General of the State, Allison B. Humphreys, advised the then Commissioner of Revenue, Alfred T. MacFarland, that it was Humphreys' opinion that the deduction in the amount indicated was a proper deduction in arriving at the Corporation's "net earnings" under the provisions .of the Tennesse Excise Tax law. Sec. 67-2701, T.C.A., et seq. This letter was filed as an exhibit in this case.

In 1961, the complainant Corporation received an additional tax assessment for its fiscal years 1951, 1952, 1953, 1954 and 1957 in the amount of $32,298.88. Of this amount, $30,676.18 represented the Excise Tax with interest on $1,184,957.00, the latter figure being the difference between the aggregate fair market value of the properties contributed to the Retirement Trust ($1,442,650,00) and the depreciated cost ($257,693.00). The additional tax and interest were paid under protest, and this suit resulted.

There is a memorandum opinion stating, *inter alia*: (1) that the contributions to the Trust were deductible

business expenses; (2) that the fair market value of the property was the proper valuation of the deduction; and (3) that "These transactions did not result in income to the complainant." The Commissioner has never seriously contested the validity of the Chancellor's first two conclusions; but he does take sharp issue with his third conclusion. The Commissioner takes the position that these contributions were "taxable earnings" to the Corporation and that these are properly measured by the appreciation in value of the property between the date of its original acquisition by the Corporation and the date of its contribution to the Trust.

It is undoubtedly true, as the Commissioner argues, that Genesco was motivated, at least in part, to make these contributions by an expectation that such contributions would result in a benefit to itself; and more likely than not, a benefit will, in fact, accrue to Genesco as a result of these transactions. But we cannot agree with the Commissioner that this benefit, is subject to the Tennessee Excise Tax or that this benefit when realized, is necessarily going to be the appreciation in value of the property from the date of the original acquisition to the date of contribution. We feel that any benefit that the Corporation receives from these contributions will appear in the form of intangibles, e. g., harmonious labor relations, greater employee efficiency, and things of this nature. These factors may in turn result in increased revenues—or lower costs to the Corporation; and if this in fact happens, the State will be entitled to impose a tax on the increased earnings in the years they appear. But this assessment must await the tangible realization of the benefit. When the Corporation made these contributions, it transferred assets worth $1,442,650.00. It received

neither money nor its equivalent in the form of property or the discharge of the legal obligation in return. We agree with the Chancellor that these transactions did not result in "earnings" as that term is used in our Excise Tax Statutes.

In holding as we do, we are not unaware that the Federal Sixth Circuit Court of Appeals in considering these identical transactions, held that they did result in a gain to the Corporation and that the gain was properly measured *for the purpose of Federal capital gains tax* by the appreciation in value of the assets between the date of acquisition and the date of contribution. *United States v. General Shoe Corporation,* 6 Cir., 282 F.2d 9 (1960). That court reasoned that a *capital gain,* although intangible, had been realized when the transfers were made. Even though the *United States v. General Shoe Corporation* case concerned itself with the taxation of the identical transactions now before us, we do not consider it to be either controlling or persuasive in the disposition of this case. In the first place, the court in *United States, v. General Shoe Corporation,* supra, was applying Federal capital gains tax while we are here concerned with the Tennessee Excise Tax on corporate earnings; and just because the contributions now before us have been held to be subject to the Federal capital gains tax, does not necessarily mean that they are also subject to the Tennessee Excise Tax. While this obvious distinction in the cases might be sufficient to dispose of the cited case, we think that there is another more compelling reason for failing to apply the "intangible benefit" rationale of the Sixth Circuit.

The Tennessee Excise Tax is imposed on the "net earnings" of a corporation. Sec. 67-2701, T.C.A. Al-

though the phrase "net earnings" is not defined in the statutes, this Court has said on numerous occasions that the phrase must be given its usual and ordinary meaning. *Bank of Commerce & Trust Co. v. Senter,* 149 Tenn. 569, 260 S.W. 144 (1923); *National Life & Accident Ins. Co. v. Dempster,* 168 Tenn. 446, 79 S.W.2d 564 (1935); *Woods Lumber Co., Inc. v. MacFarland,* 209 Tenn. 667, 355 S.W. 2d 448 (1962). While the method of fixing "net earnings" is within the discretion of the Commissioner (Sec. 67-2715, T.C.A.; *Southern Coach Lines v. McCanless,* 191 Tenn. 634, 235 S.W.2d 804 [1951]), the method so fixed cannot be arbitrary. *Southern Coach Lines v. McCanless,* supra. We think that the Commissioner's contention that "earnings" resulted from these transactions and his reliance on the Federal case cited fails to take into account the directive of this Court that the phrase "net earnings" must be given its usual and ordinary meaning. We think that acceptance of his contention would result in a "forced or subtle construction" of the phrase such as was condemned in the case of *Bank of Commerce & Trust Co. v. Senter,* supra. We do not think that "earnings" when considered in its ordinary and usual meaning includes the intangible benefit presented in this case.

In *Southern Coach Lines v. McCanless,* supra, the Coach Company had acquired old street cars and other properties at practically no cost to it and disposed of them at sales, and the proceeds were paid out in stock dividends; the proceeds from such sales were held by this Court to be "earnings" within the Corporate Excise Tax Law here under consideration. In other words in this case these profits were held to be earnings. In each of the cases cited by the Commissioner wherein it was held that the corporation had net earnings the company has profit-

ed or realized an income therefrom which were taxed. In the instant case there is no profit. It clearly seems to us that the Legislature fixed this tax on "net earnings", and, under all of our holdings, such must be given the usual and ordinary meaning that the Legislature had in mind that the corporation must derive some tangible benefit. In other words "earnings" in this statute is synonymous with "income" as used by the Chancellor in his opinion. "Earnings" are customarily understood to be the income from the corporation's operations and they must be tangible earnings. Clearly this must have been what the Legislature had in mind when enacting the Excise Tax Statute here under consideration. This statute has been on the books for more than forty years with the Court's interpretation that the words "net earnings" must be given their usual and ordinary meaning. During this long period of time the Legislature has not seen fit to change or specifically define what is meant by "net earnings". Thus it is that we certainly cannot give this a strained meaning so as to tax the intangible benefits that the Corporation here may have obtained by transferring this property to the Trust in question.

The result is that the decree of the Chancellor must be affirmed.