R. C. Owen Company (a Kentucky corporation) v. Commissioner.
R. C. Owen Co. v. Commissioner
Docket No. 91234.
United States Tax Court
T.C. Memo 1964-120; 1964 Tax Ct. Memo LEXIS 216; 23 T.C.M. (CCH) 673; T.C.M. (RIA) 64120; April 30, 1964
William Waller, American Trust Bldg., Nashville, Tenn., and Robert G. McCullough, for the petitioner. William F. Franklin, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined deficiencies in petitioner's income tax for the taxable years and in the amounts set forth below: Taxable Year
Deficiency
1954
$4,145.15
1955
4,368.00
1956
4,368.00 The principal issue presented for decision is whether respondent erred in determining that petitioner was not entitled to deductions claimed in each of the years 1954, 1955 and 1956 as interest paid on certain of its securities called Debenture Bonds because the so-called debentures did not represent bona fide indebtedness, *217 and the payments made thereon were not deductible as interest. Findings of Fact Many of the facts were stipulated by the parties. Their stipulation, together with attached exhibits, is incorporated herein by this reference. R. C. Owen Company (hereinafter referred to as petitioner) is a Kentucky corporation having its principal place of business in Hopkinsville, Kentucky. Its Federal income tax returns for the calendar years 1954, 1955 and 1956 were filed with the district director of internal revenue, Louisville, Kentucky. Petitioner was organized on November 23, 1946, to acquire, and on January 1, 1947 did acquire the family partnership of R. C. Owen Company, manufacturers of hardwood flooring and allied products, the partners being R. C. Owen and his two sons, R. C. Owen, Jr., and Roy Owen. The interest of the father in the partnership was 72 percent and that of the two sons was 14 percent each. In exchange for the business and assets of the partnership, petitioner issued to the partners 20,000 shares of common stock of the par value of one dollar per share and $340,000 of 20-year Three and One-Half Per Cent Debenture Bonds, the stock and debentures being issued to the *218 partners in exactly the same proportion as their interests had been in the partnership. Each of these debentures contained the following provisions: This Debenture Bond may be called and paid at any time up to and including January 1, 1957, at the price of 101% of principal and all accrued and unpaid interest, and thereafter at par plus accrued and unpaid interest * * *. Interest shall cease on any Debenture Bond, or that part of it called for redemption on the date fixed for redemption * * *. All Debenture Bonds called and redeemed by the Company shall be cancelled and not reissued. Until the entire amount of Debenture Bonds of this series are paid in full, R. C. Owen Company covenants and agrees not to mortgage, pledge, or place any lien on any property of the Company to secure indebtedness, other than notes for deferred purchase price of realty or personalty secured by a lien on the property purchased or retention of title of personalty, and that it will maintain net current assets in the amount of $100,000, or fifty per cent of the outstanding Debenture Bonds, whichever amount is smaller. The placing of a lien in violation of this agreement or failure to maintain net current *219 assets as herein provided, constitutes an event of default. By the acceptance of this Debenture Bond, the holder hereof, for himself and all subsequent holders expressly agrees that this Debenture Bond shall be subject and secondary to any and all indebtedness incurred by R. C. Owen Company, to banks or to others in the ordinary course of business. This subordination shall cease when surplus equals the amount of these outstanding Debenture Bonds. Any and all provisions and agreements of this Debenture Bond, insofar as they affect the holders hereof, may be changed, altered, or amended by a vote in writing of the holders of these Debenture Bonds holding seventy-five per cent of the principal amount thereof. To accomplish this, a writing shall be executed, signed by at least seventy-five per cent of said holders and filed with the Company, and thereupon, the Company is authorized and empowered to execute new Debenture Bonds in exchange for the outstanding Debenture Bonds, with the alterations or amendments as provided in said instrument. In the event R. C. Owen Company fail to pay interest on this Debenture Bond when due, or commit any other event of default hereinabove set out, *220 then and in such event, and after thirty (30) days' notice in writing to the Company of the existence of the default, the holders of 75% in amount of Debenture Bonds then outstanding may declare the entire series of Debenture Bonds due and payable by a notice in writing to the Company, and such declaration shall mature all outstanding Debenture Bonds, with the same effect as if they had matured by lapse of time. Petitioner commenced business on January 1, 1947, with net assets (exclusive of the $340,000 in debentures) per books of $307,987.32. Included in these assets were (1) inventories which, although carried at a book value of $193,292.62, had a market value of perhaps twice that figure in consequence of the removal of O.P.A. price controls in November of 1946; and (2) fixed assets (plant and machinery) having a book value of $115,600.17 but a real value, as a result of postwar inflation, of substantially in excess of this figure. In December 1947, R. C. Owen, chairman of petitioner's board of directors, made an exchange with the two sons, giving 2,300 shares of the one dollar par value common stock to each in return for $2,300 of debentures from each son. By instrument dated *221 December 1, 1947, R. C. Owen transferred his remaining 9,800 shares of stock to trustees for the benefit of his six children. [1] The trust deed was irrevocable, and by it R. C. Owen completely divested himself of voting rights and all other control of this stock. After this transaction, R. C. Owen owned $249,400 of the $340,000 of debentures, but he owned no formal stock whatever. Nevertheless, he continued to serve as chairman of petitioner's board of directors until several months prior to his death in 1961. There has been no default in petitioner's Debenture Bonds, as all payments upon them have been made when due. During the years 1947 to 1956 petitioner had the following earned surplus (per books) and paid the following dividends on its common stock: Earned Surplus
Dividends
Year
12/31
Paid
1947
$129,205.68 $0
1948
179,850.07
60,000
1949
227,115.21
20,000
1950
332,435.95
50,000
1951
399,789.91
25,000
1952
431,033.77
20,000
1953
454,394.65
10,000
1954
462,910.09
10,000
1955
546,778.64
1,000
1956
629,619.19
0
*222 Petitioner has also redeemed $100,000 of its Debenture Bonds as reflected below: Year
R. C. Owen
R. C. Owen, Jr.
Roy Owen
Total
1948
$29,400
$5,300
$5,300
$ 40,000
1949
30,000
30,000
1950
22,000
4,000
4,000
30,000
Totals
$81,400
$9,300
$9,300
$100,000
In 1962, pursuant to agreement of the then holders of petitioner's Debenture Bonds, [2] the debentures were amended in the following manner: (1) By eliminating the two sentences reading as follows: "… Any and all provisions and agreements of this Debenture Bond, insofar as they affect the holders hereof, may be changed, altered, or amended by a vote in writing of the holders of these Debenture Bonds holding seventy-five per cent of the principal amount thereof. To accomplish this, a writing shall be executed, signed by at least seventy-five per cent of said holders and filed with the Company, and thereupon, the Company is authorized and empowered to execute new Debenture Bonds in exchange for the outstanding Debenture Bonds, with the alterations or amendments as provided in said instrument." (2) By striking *223 the language in the succeeding paragraph reading: "the holders of 75% in amount of Debenture Bonds then outstanding may declare the entire series of Debenture Bonds due and payable by a notice in writing to the Company, and such declaration shall mature all outstanding Debenture Bonds," to read: "the holder of any of said Debenture Bonds due and payable by a notice in writing to the Company, and such declaration shall mature such outstanding Debenture Bonds,". For each of the taxable years 1954, 1955 and 1956 petitioner deducted as interest expense the sum of $8,400, which it had paid to its debenture holders in those years. Respondent disallowed the claimed deductions on the ground that the same did not constitute "an allowable deduction under section 163 of the Internal Revenue Code of 1954." Opinion Section 163(a) of the 1954 Code permits a deduction for all the interest paid or accrued within the taxable year on "indebtedness". The issue to be decided in the instant case is whether petitioner's Debenture Bonds represent such an "indebtedness," or whether they evidence merely a proprietary equity on the part of the former partners. Resolution of this issue *224 depends in general upon all the facts surrounding the issuance of the debentures and in particular upon the provisions of the instruments themselves. Petitioner's Debenture Bonds are by no means unambiguous documents. While unquestionably they contain some of the indicia of debt, they also contain numerous other characteristics which are peculiarly associated with stock. For example, upon their issuance they were subordinated to all other indebtedness of the corporation. Further, a default in their provisions is without effect absent a vote in writing of 75 percent in amount of the debenture holders. Finally, there is the reciation that "any and all provisions and agreements" of the debentures, "insofar as they affect the holders [thereof], may be changed, altered or amended by a vote in writing' of such holders "holding 75% of the principal amount" of the Debenture Bonds. Following notification of a vote for such a change or alteration, "the Company is authorized and empowered to execute new Debenture Bonds in exchange for the outstanding Debenture Bonds, with the alterations or amendments as provided in" the notification. Debenture bond provisions identical with these were *225 construed by the Court of Claims in the case of R. C. Owen Company v. United States, [3]180 F. Supp. 369 (Ct. Cl. 1960) certiorari denied 363 U.S. 819 (1960). Commenting upon the "amendment provisions" of such debentures, the Court of Claims observed: At the least, these provisions give certain important voting rights to the debenture holders. Although it may be that the entire provision only empowers 75% in amount of the debenture holders to make changes and alterations with the agreement of the corporation, it might well be contended that, by an affirmative vote of 75% in amount of the debenture holders, the provisions of the debentures may be changed at will, even to the extent of increasing the interest rate of accelerating the maturity. If such be the case, the holders of the debentures would have almost as much control of the corporation as common stockholders. Of similar import is the case of Luden's Inc. v. United States, 196 F. Supp. 526 (E.D. Pa., 1961), involving the question of whether certain debenture bonds issued by Luden's company represented bona fide indebtedness. Contrasting Luden's debentures with those which had been the *226 subject matter of R. C. Owen Company v. United States, supra, the District Court stated: In comparing the rights of the debenture holders in the case at bar with the unusual rights of those who held the disputed securities in the Owen case it becomes apparent that the rights of these debenture holders are quite pedestrian in character. These debenture holders do not have the right to rewrite the debentures as did the debenture holders in the Owen case, and by that means control the obligor corporation. We are in complete agreement with both the courts above quoted that "amendment provisions," such as are contained in the Debenture Bonds issued by petitioner herein, give to the holders thereof rights normally enjoyed only by common stockholders. Certainly provisions in a purported debt instrument which grant such substantial rights cast a serious doubt as to whether the holder of such an instrument is in fact a creditor of the issuing corporation. *227 Likewise, the subordination feature of petitioner's Debenture Bonds denigrates the existence of a debtor-creditor relationship between petitioner and its debenture holders. Petitioner's contention that the debentures were not subordinate during the taxable years at issue (because of an excess of surplus over the face amount of outstanding debentures) lacks relevancy to the crucial inquiry whether, at the time of their issuance, they represented true debt or merely a continuing proprietary equity. Moreover, as we see it, an "indebtedness" which is subordinate unless the business prospers (i.e., until such time as earned [4] surplus equals the amount of outstanding debentures) is no indebtedness at all, but rather a classic variety of risk capital. Nor is characterization of these Debenture Bonds as representing risk capital negatived by the factual pattern within which they were issued. The debentures certainly were not given, as is typical, in exchange *228 for borrowed money, but rather appear to be the equity interest of the former partners clothed in the dress of corporate debt. [5] And their standing as indebtedness is further subject to attack because of the substantial identity of interest which existed between the holders thereof and petitioner's formal stockholders. Although it is true that after 1947 R. C. Owen owned no formal stock - he having in that year placed all of his stock in irrevocable trust for his children - it is inconceivable that as trust settlor he would thereafter act as a "creditor" in any way inimical to the stock which constituted the trust corpus.
*229 Under all the circumstances we are persuaded that petitioner's Debenture Bonds do not represent a bona fide indebtedness and we therefore hold that respondent did not err in disallowing to petitioner the claimed deductions for the years 1954, 1955 and 1956 on the ground that the same did not constitute interest on indebtedness within the purview of section 163(a) of the Internal Revenue Code of 1954. Decision will be entered under Rule 50. Footnotes
1. The parties have erroneously stipulated that this instrument was executed in January 1948 despite the fact that it was dated and witnessed December 1, 1947.↩
2. Being R. C. Owen, Jr., Roy Owen and the estate of R. C. Owen.↩
3. Not petitioner herein, but a Tennessee corporation which was organized to acquire and did acquire the assets of a partnership engaged in the tobacco business (the partners having been R. C. Owen, R. C. Owen, Jr., and Roy Owen) in exchange for stock and debentures which for all practical purposes are indistinguishable from those involved in the instant case.↩
4. The evidence establishes that petitioner has only one surplus account - that of "earned" surplus - thus eliminating the possibility that the term "surplus" as used in its debentures could refer to any other type of surplus.↩
5. Compare Kraft Foods Company v. Commissioner, 232 F. 2d 118 (C.A. 2, 1956) reversing 21 T.C. 513 (1954) wherein the Commissioner's argument that issuance of the controverted debentures brought in no new capital was rejected on the grounds that this principle could not be controlling "where, as here, the debenture is unambiguous and contains all the characteristics of a debt instrument." 232 F. 2d at 126↩. As has been pointed out, the debenture bonds involved herein are definitely not "unambiguous" and their resemblance to usual debt instruments is questionable.