R. C. Owen Company, Appellant,

*v.*

G. Hilton Butler, Commissioner, Appellee.

387 S.W.2d 830.

(*Nashville,* December Term, 1964.)

Opinion filed March 4, 1965.

Waller, Lansden & Dortch, Nashville, for appellant.

George F. McCanless, Attorney General, Milton P. Rice, Assistant Attorney General, for appellee.

MR. JUSTICE HOLMES delivered the opinion of the Court.

The original bill in this case was filed in the Chancery Court of Davidson County, pursuant to T.C.A. sec. 67-2305, by R. C. Owen Company, a Tennessee corporation, to recover Tennessee excise taxes in the amount of $3,150.76, together with proper interest thereon, which had been paid under protest by the complainant. The case was tried on stipulation of facts before the Chancellor, who dismissed the bill. Complainant has duly appealed to this Court.

The complainant corporation was organized on October 19, 1946, to acquire, and on December 1, 1946, it did acquire the business and assets of a partnership known as R. C. Owen, Manufacturers of Tobacco. The partnership was owned by R. C. Owen 72%, by R. C. Owen, Jr., 14%, and by Roy Owen 14%. R. C. Owen, Jr., and Roy Owen are two of the sons of R. C. Owen.

The complainant corporation acquired the business and assets of the partnership in exchange for 35,000 shares of common stock of the par value of $1.00 per share and $800,000.00 of 3½% debenture bonds. Both the stock and the debentures were issued to the former partners in the same ratio that they had owned the partnership. The balance sheet of the corporation on December 1, 1946,

immediately after it took over the assets and business of the partnership, shows that the corporation had total assets of $1,090,245.26. It had current liabilities of $255,245.26, which together with the $800,000.00 of debentures and $35,000.00 of capital equaled the assets of the corporation. There was no surplus. The debentures issued to the former partners provide:

"By the acceptance of this Debenture Bond, the holder hereof, for himself and all subsequent holders expressly agrees that this Debenture Bond shall be subject and secondary to any and all indebtedness incurred by R. C. Owen Company, to banks or to others in the ordinary course of business."

The debentures also provide:

"Any and all provisions and agreements of this Debenture Bond, insofar as they affect the holders hereof, may be changed, altered, or amended by a vote in writing of the holders of these Debenture Bonds holding seventy-five percent of the principal amount hereof."

These debentures contained the additional provision that in the event the corporation should fail to pay interest on any of the debentures when due, or commit any other event of default, the holders of 75% in amount of the debentures then outstanding may declare the entire series of debentures due by giving the corporation notice. There has been no failure to pay interest when due or other default by the corporation, which according to its books has made a net profit each full year of its operation.

In November 1947, R. C. Owen exchanged with his son, R. C. Owen, Jr., 4,000 shares of his stock in the corporation for $4,000.00 in debentures, and made the same

exchange with his son, Roy Owen. In December 1947, Mr. Owen placed his remaining 17,200 shares of stock in trust for the benefit of his six children, and retained all of the debentures held by him. After surrendering all of the stock owned by him, R. C. Owen continued to serve as Chairman of the Board of the corporation until his death in 1961 at the age of 90 years. The stipulation shows that it was out of filial respect for him that his sons, R. C. Owen, Jr., and Roy Owen, the majority stockholders of the corporation, gave R. C. Owen this title, position, and office. No dividends were ever declared on the common stock. Each year's net earnings, as reflected by the books of the company were transferred to earned surplus.

The defendant Commissioner of Revenue accepted the excise tax returns of the complainant corporation for the fiscal years ending April 30, 1956, April 30, 1957, and April 30, 1958. When, however, a revision in complainant's net income was made by the Internal Revenue Service, which revision was upheld by the United States Court of Claims in the case of *R. C. Owen Co. v. United States,* 180 F.Supp. 369, the defendant Commissioner asserted an excise tax deficiency for those years against the complainant corporation upon the theory that complainant, by deducting the interest payments upon the debentures, had understated the amount of its net earnings subject to Tennessee excise tax. Subsequently, in *R. C. Owen Co. v. United States,* 363 U.S. 819, 80 S.Ct. 1256, 4 L.Ed.2d 1516, the United States Supreme Court denied certiorari in the federal tax case.

The Tennessee excise tax is based upon the "net earnings" of the corporation. T.C.A. sec. 67-2701. The Statute does not define the term "net earnings". This Court, in a number of cases, has held that the phrase "net earnings"

must be given its usual and ordinary meaning. *Genesco, Inc. v. Butler,* 214 Tenn. 87, 377 S.W.2d 933, 936, and cases cited therein. In that case, this Court further held:

"While the method of fixing 'net earnings' is within the discretion of the Commissioner (sec. 67-2715, T.C.A.; *Southern Coach Lines v. McCanless,* 191 Tenn. 634, 235 S.W.2d 804 [1951]), the method so fixed cannot be arbitrary."

Also, in *Southern Coal Co. v. McCanless,* 183 Tenn. 457, 462, 192 S.W.2d 1003, 1005, it was held:

"The fair construction of this provision (now T.C.A. sec. 67-2715) is that the commissioner has full and final discretion to provide a method of fixing 'net earnings,' and so long as the method employed is not obviously arbitrary, or a manifest abuse of discretion, the method he fixes is final and not subject to judicial review."

The decree of the Chancery Court in the present case states:

"These debentures were not issued for borrowed money and also in view of certain of their provisions the Court is of the opinion that the defendant, Commissioner, did not abuse the authority vested in him by T.C.A. 67-2715 by restoring the interest paid on said debentures to the complainant's 'net income'."

The question before us then is whether or not the defendant Commissioner abused his discretion in ruling that the complainant corporation was not entitled to deduct the interest paid on the debentures in determining the net earnings of the corporation.

The Internal Revenue Code provides that in computing net income "there shall be allowed as a deduction all

interest paid or accrued within the taxable year on indebtedness." Int.Rev.Code of 1954, sec. 163.

In *R. C. Owen Co. v. United States,* Ct.Cl., 180 F.Supp. 369, the United States Court of Claims found that the debentures issued to the former partners by the corporation in the present case:

"* * * constituted contributions to capital, or capital investments on the part of the partners, rather than indebtedness. Hence, the periodic payments to the debenture holders were not deductible as interest on indebtedness". 180 F.Supp. at 373.

In arriving at this conclusion, the United States Court of Claims reasoned:

"It is true that the securities here under consideration have some of the indicia of evidences of debt. The securities are denominated as debentures, they have a fixed interest rate, and a fixed maturity date. However, they have numerous other characteristics more indicative of contributions to capital, i. e., capital stock. In the first place, no money was loaned to the corporation by the recipients of debentures nor did the partners pay anything to the corporation for the debentures. They were issued to the partners in precisely the same proportion as their respective interests in the partnership. No preferred stock was issued. The debentures were specifically made 'subject and secondary to any and all indebtedness incurred' by the corporation, a characteristic of common stock. The holders of the debentures acquired certain voting rights not ordinarily characteristic of debentures." 180 F.Supp. at 372.

*     *     *     *     *     *

"Without undertaking to state precisely what the debt to equity ratio was in the capitalization of the corporation, it is obvious that equity capital of $35,000.00 is entirely disproportionate in a business with a funded debt of $800,000.00 and current liabilities of $255,-245.26." 180 F.Supp. at 372-373.

In *Genesco, Inc. v. Butler,* supra, we expressly held that the decision of the United States Court holding certain transfers by a Tennessee corporation resulted in a long term gain to the corporation for the purpose of federal capital gains tax was in no way binding on us in determining whether or not the transaction increased the "net earnings" of the corporation upon which the Tennessee excise tax is computed. While this is true, it is also true that the defendant Commissioner is not bound to treat the interest paid on the securities denominated as debentures as a deduction in determining net earnings if it fairly may be said that the debentures in fact represent equity capital, and not an indebtedness of the corporation.

The debentures in the case were issued to the former partners in exchange for their interest in the partnership in the same proportion in which they owned the partnership. The debentures were subordinated to all obligations incurred by the corporation in the ordinary course of business. The holders of the debentures acquired certain voting rights not ordinarily characteristic of debentures. The corporation is closely held by the members of one family who are not dealing at arm's length with each other. After Mr. Owen placed his stock in trust for the benefit of his six children, R. C. Owen, Jr. and Roy Owen continued to own a majority of the stock in the corporation and they and their father owned all of the deben-

tures. The $800,000.00 of debentures make the indebtedness of the corporation extremely high in proportion to equity capital, as evidenced by the outstanding shares of stock.

In the brief of the appellant, a number of federal tax cases holding that the fact alone that the debentures were issued to the partners in the same proportion that they owned the partnership does not of itself make the debentures equity capital rather than indebtedness of the corporation are relied upon. Likewise, a number of federal tax cases holding that a note or debenture is not deprived of its status of indebtedness and converted into equity capital merely because it is subordinated to other indebtedness are cited. Also, federal tax cases are cited holding that the fact alone that the holders of less than the entire outstanding amount of the debentures may be authorized to act for all holders as a class in accelerating maturity because of default or in dealing with the corporation as to amendments in the provisions of the instrument does not prevent a debenture from remaining an evidence of indebtedness.

Just as no one piece of a jigsaw puzzle makes the picture, so no one of the characteristics of equity capital which these debentures have would of itself make the debentures equity capital rather than evidence of indebtedness. When all of the pieces of the jigsaw puzzle are put together, then the picture is made. It is the cumulative effect of all of the facts that led the Court of Claims to the conclusion that these debentures represented equity capital rather than an indebtedness of the corporation.

In *John Kelley Company v. Commissioner of Internal Revenue*, 326 U.S. 521, 66 S.Ct. 299, 90 L.Ed. 278, in which

opinion the case of *Talbot Mills v. Commissioner,* is also decided, the United States Supreme Court stated:

"The documents under consideration embody elements of obligations and elements of stock. There is no one characteristic, not even exclusion from management, which can be said to be decisive in the determination of whether the obligations are risk investments in the corporations or debts. So-called stock certificates may be authorized by corporations which are really debts, and promises to pay may be executed which have incidents of stock." 326 U.S. at 530, 66 S.Ct. at 304.

The proper method of determining whether a given security represents equity capital or indebtedness was stated in *Lee Telephone Co. v. Commissioner of Internal Revenue,* 4 Cir., 260 F.2d 114, 115, as follows:

"In such a case when the issue arises and it is necessary for the Court to determine whether particular payments are interest and deductible by the payor in computing its income taxes, or dividends, and, therefore, nondeductible by the payor, it is necessary to look at all of the terms and provisions of the particular security, the purpose for which it was issued, the surrounding circumstances and the general intention of the parties. The presence or absence of a particular provision rarely can be held controlling and conclusive, and the security and all payments thereon must be finally characterized after it has been viewed in all of the light which the scene affords."

The facts of the case of *R. C. Owen Company (a Kentucky corporation) v. Commissioner,* T. C. Memo 1964-120, C.C.H. Dec. 26,778(M) are almost identical with those in the case sub-judice. There, a corporation was organized

to acquire and operate a family partnership engaged in the manufacture of hardwood flooring and allied products. 20,000 shares of common stock of the par value of $1.00 per share, together with $340,000.00 of twenty-year 3½% debentures, were delivered to the former partners in exchange for the partnership assets in the same proportion in which the partners had owned the partnership. The provisions of the debentures in that case appear to be the same as the provisions of the debentures in the case before the Court. There, the United States Tax Court held that the characteristics of the debentures gave the holders thereof rights normally enjoyed by common stockholders and, therefore, the debentures represented a continuing proprietary capital equity.

In the light of all the facts and circumstances shown in this record, it cannot be said, in our judgment, that the defendant Commissioner acted arbitrarily or abused his discretion in ruling that payments made by the corporation to the holders of the debentures could not be deducted by the corporation in determining the corporation's net earnings for the years in question.

The judgment of the Chancery Court is affirmed at the appellant's cost.

CLEMENT, SPECIAL JUSTICE, not participating.