**R. C. OWEN COMPANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 16018.**

United States Court of Appeals
Sixth Circuit.

Oct. 7, 1965.

5. 16 U.S.C.A. § 825 *l.*

William Waller, Nashville, Tenn., for petitioner, Robert G. McCullough, Nashville, Tenn., on the brief, Waller, Lansden & Dortch, Nashville, Tenn., of counsel.

Solomon Warhaftig, Dept. of Justice, Washington, D. C., for respondent, Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, I. Henry Kutz, Edward Heilbronner, Attys., Dept. of Justice, Washington, D. C., on the brief.

Before WEICK, MILLER and O'SULLIVAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Petitioner, R. C. Owen Company, a Kentucky Corporation, seeks reversal of a decision of the Tax Court, which sustained the Commissioner of Internal Revenue's disallowance of deductions for interest paid by petitioner in the years 1954, 1955 and 1956 upon its issue of so-called debenture bonds. The Tax Court after making its Findings of Fact and expressing its view of applicable law, concluded as follows:

"Under all the circumstances, we are persuaded that petitioner's Debenture Bonds do not represent a bona fide indebtedness and we therefore hold that respondent [Commissioner of Internal Revenue] did not err in disallowing to petitioner the claimed deductions for the years 1954, 1955 and 1956 on the ground that the same did not constitute interest on indebtedness within the purview of Section 163(a) of the Internal Revenue Code of 1954."

We affirm the decision of the Tax Court which is reported as T.C. Memo 1964–120, P–H Tax Ct. Mem. 64–120.

Petitioner-taxpayer was organized as a Kentucky Corporation on November 23, 1946, to acquire—and on January 1, 1947, did acquire—the family partnership of R. C. Owen Company, manufacturers of hardwood flooring and allied products, the partners being R. C. Owen and his two sons, R. C. Owen, Jr., and Ray Owen. The father owned a 72% interest and each of the sons a 14% interest in the partnership. In exchange for the business and assets of the partnership, petitioner corporation issued to the partners 20,000 shares of one dollar par value common stock and 20 year 3½% debenture bonds in total face amount of $340,000.00. The stock and debentures were issued to the partners in a proportion corresponding exactly to their interests in the partnership. The debentures were not issued as promises to repay money borrowed by the taxpayer corporation.

The memorandum opinion of the Tax Court sets forth in detail the experiences and conduct of the business of the petitioner corporation following the issue of the debentures and the rearrangement of the interests of the various shareholders. We need not review all of such factual material but quote the following from the Tax Court's findings:

"Petitioner commenced business on January 1, 1947, with net assets (*exclusive* of the $340,000 in debentures) per books of $307,987.32. Included in these assets were (1) inventories which, although carried at a book value of $193,292.62, had a market value of perhaps twice that figure in consequence of the removal of O.P.A. price controls in November of 1946; and (2) fixed assets (plant and machinery) having a book value of $115,600.17 but a real value, as a result of postwar inflation, of substantially in excess of this figure.

In December, 1947, R. C. Owens, chairman of petitioner's board of directors, made an exchange with the two sons, giving 2,300 shares of the one dollar par value common stock to each in return for $2,300 of debentures from each son. By instrument dated December 1, 1947, R. C. Owen transferred his remaining 9,800 shares of stock to trustees for the benefit of his six children. The trust deed was irrevocable, and by it R. C. Owen completely divested himself of voting rights and all other control of this stock. After this transaction, R. C. Owen owned $249,400 of the $340,000 of debentures, but he owned no formal stock

whatever. Nevertheless, he continued to serve as chairman of petitioner's board of directors until several months prior to his death in 1961."

During the years following its incorporation, taxpayer timely met all amounts payable upon its debentures and at the time of the Tax Court opinion it had redeemed (after the tax years in question and after the commissioner had challenged the deductibility of the interest on such debentures) $100,000 of its debenture bonds. It had also paid substantial dividends on its common stock.

Among the provisions of the debentures were the following:

" * * * the holder hereof * * * agrees that this Debenture Bond shall be subject and secondary to any and all indebtedness incurred by R. C. Owen Company to banks or to others in the ordinary course of business.

      *     *     *     *     *     *

"Any and all provisions and agreements of this Debenture Bond, insofar as it affects the holders hereof, may be changed, altered, or amended by a vote in writing of the holders of these Denbenture Bonds holding seventy-five per cent of the principal amount thereof. To accomplish this, a writing shall be executed signed by at least seventy-five per cent of said holders and filed with the company, and thereupon the company is authorized and empowered to execute new Debenture Bonds in exchange for the outstanding Debenture Bonds, with the alterations or amendments as provided in said instrument."

"In the event R. C. Owen Company fail to pay interest on this Debenture Bond when due, or commit any other event of default hereinabove set out, then and in such event, and after thirty (30) days' notice in writing to the Company of the existence of the default, the holders of 75% in amount of Debenture Bonds then outstanding may declare the entire series of Debenture Bonds due and payable by a notice in writing to the Company, and such declaration shall mature all outstanding Debenture Bonds, with the same effect as if they had matured by lapse of time."

R. C. Owen and his sons, R. C. Owen, Jr., and Ray Owen were also partners in an enterprise in Tennessee. In the same year that the petitioner Kentucky Corporation was formed, they organized a Tennessee Corporation, R. C. Owen Company, and transferred to it the assets of their Tennessee partnership theretofore known as R. C. Owen, Manufacturers of Tobacco. As in the case before us, the partners received common stock and debentures in proportion to their partnership interests, 72% going to the father and 14% to each son. Such debentures contained provisions identical to those quoted above. The post-incorporation rearrangement of the holdings of the stock and debentures between the father and sons and other members of the Owen family as to the Tennessee Corporation was substantially the same as in the case of the Kentucky Corporation here involved. In this rearrangement the father, R. C. Owen, while divesting himself of all common shares ended as the owner of upwards of 75% of the debentures issued by the Tennessee company and just less than 75% of the debentures issued by the Kentucky company. In spite of his lack of any formal stockholder's interest, R. C. Owen, continued as chairman of the Board of both companies.

For the years 1953, 1954 and 1955, the R. C. Owen Company of Tennessee paid the interest on its said debentures and took deductions therefor in its income tax returns for those years as "interest paid". Int. Rev. Code of 1939 § 23, Int. Rev. Code of 1954 § 163. The Commissioner of Internal Revenue disallowed such deductions and assessed deficiencies accordingly. The R. C. Owen Company of Tennessee brought suit in the United States Court of Claims to recover the amount of such deficiencies which it paid

under protest. The Court of Claims sustained the Commissioner's assessment by its decision in R. C. Owen Company v. United States, 180 F.Supp. 369 (1960) cert. denied, R. C. Owen Co. v. United States, 363 U.S. 819, 80 S.Ct. 1256, 4 L.Ed.2d 1516 (1960). Its decision was bottomed upon the view that the debentures did not constitute a true indebtedness of the corporation and that the annual payment to the owners thereof did not constitute deductible "interest paid" within the meaning of the applicable sections of the Internal Revenue Code. It held that the assets exchanged for the debentures "definitely constituted contributions to capital, or capital investments on the part of the partners, rather than indebtedness." 180 F.Supp. 373. Following the Court of Claims decision, the Commissioner of Revenue of Tennessee assessed deficiencies against R. C. Owen Company of Tennessee adding back to "net earnings" the amount that that company had previously deducted for payments on such debentures in computing its Tennessee excise tax. The Supreme Court of Tennessee affirmed the Chancery Court of Davidson County, Tennessee, which dismissed the Tennessee R. C. Owen Company's suit to recover the excise taxes paid after disallowance of the payments made on the debentures. R. C. Owen Company v. Butler, Tenn., 387 S.W. 2d 830 (1965). We find no reason to disagree with the Court of Claims or the Tennessee Supreme Court in such decisions. We are not cited to any decision suggesting that the Kentucky courts would take a different view of the character of these debentures than did the Tennessee Court. The fact that the taxpayer corporation in the case at bar declared substantial dividends on its common stock during the tax years involved, whereas no like dividends were paid by the Tennessee company and that after the tax years here involved, the petitioner did repay $100,000 of its debentures do not provide a basis for distinguishing the Court of Claims case from the one before us.

The Tax Court in the case at bar relied on various characteristics of the alleged debtor-creditor relationship to support its finding. They were:

(a) The debentures provided that all or any of their terms "as they affect the holders hereof" could be amended by a vote of 75% of the holders thereof. Neither the Tax Court here, nor the Court of Claims in the case of Owens' Tennessee Company expressed a firm view that such right of amendment could be exercised without the agreement of the corporation, but they did rely on such as a *possible* construction of the provision involved. The Court of Claims merely said that "it might well be contended that [by exercise of the right of amendment] the debentures may be changed at will even to the extent of increasing the interest rate or accelerating the maturity. If such be the case, the holders of the debentures would have almost as much control of the corporation as common shareholders." If it was true that under the terms of these debentures 75% of the holders thereof could have, without corporate consent, amended any of the terms which affected the holders thereof, then indeed these debentures were not evidence of debt, for it would be a novel debtor-creditor relationship where the creditors, on their own motion, could raise or lower the interest rate, adjust the maturity date, obtain or give up security, or do anything else they chose. The taxpayer corporation, however, says that these extraordinary powers could not be exercised by the debenture holders without corporate consent. Certainly such a reading is not clear from the language that upon an amendment being so made "the company is *authorized and empowered* to execute new Debenture Bonds * * * with the alterations or amendments as provided in said instrument." Although we are inclined to feel that as written the

amendment power did not require corporate consent,[1] this is not necessary to our decision, for the very fact of ambiguity in the provision was sufficient with the other evidence to support the Tax Court's refusal to treat these debentures as promises to pay a debt owed by the corporation.

(b) There was originally an exact correspondence of interests between the shareholders controlling the corporation and the alleged creditors holding the debentures. While not of controlling importance such identity of interests was a circumstance properly considered on the question here.

(c) The debentures did not come into being as promises to repay a borrowing or as means of providing needed financing of the corporation.

(d) The debentures were to subordinate to "any and all indebtedness incurred by R. C. Owen Company to banks or to others in the ordinary course of business."

(e) Action by 75% of the debenture holders was necessary to accelerate maturity on default.

No one of the foregoing circumstances was relied on by the Tax Court as alone destroying the indebtedness quality of the debentures, but the total weight of them gave substantial support to the Tax Court's conclusion. Its final factual inference drawn from the evidence before it will not be disturbed by us unless clearly erroneous, 26 U.S.C. § 7482; Rule 52(a) Fed.Rules Civ.P.;

Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

In our recent decision in Foresun, Inc. v. Commissioner of Internal Revenue, 348 F.2d 1006 (C.A. 6, 1965) this Court took occasion to say:

"It is axiomatic in tax cases that transactions between members of a family and family-owned corporations are closely scrutinized. It is also well settled that the substance of the transaction, rather than its form, is controlling. Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596; Consumers Credit Rural Cooperative Corp. v. Commissioner of Internal Revenue, 319 F. 2d 475, 478 (C.A. 6); Gooding Amusement Co. v. Commissioner of Internal Revenue, 236 F.2d 159 (C.A. 6), cert. denied, 352 U.S. 1031, 77 S.Ct. 595, 1 L.Ed.2d 599. '[W]hile numerous criteria may exist as guidelines helpful in making the final factual determination as to the true character for tax purposes of a transaction, no single factor can be decisive.' Moughon v. Commissioner of Internal Revenue, 329 F.2d 399, 401 (C.A. 6)."

We are of the view that the evidence in this case substantially supported the Tax Court's factual conclusions and we discern no error of law in its decision.

Judgment affirmed.

---

1. It should be noted that following the opinion of the Court of Claims and pursuant to agreement of debenture holders of the Kentucky Corporation the debentures were amended to strike therefrom the two clauses which impressed the Court of Claims as negativing the indebtedness character of the debentures, namely the right of 75% of the holders of the debentures to change their terms "as they affect the holders hereof" and the provision whereby upon default acceleration could not be effected except by a vote of 75% of the holders.