Plastic Toys, Inc. v. Commissioner.
Amloid Corporation v. Commissioner.
Plastic Toys v. Comm'r
Docket Nos. 2110-67, 2111-67.
United States Tax Court
1968 U.S. Tax Ct. LEXIS 202; 27 T.C.M. (CCH) 707; T.C. Memo 1968-143; July 8, 1968, Filed
*202 Decisions will be entered for the petitioners.
Edward F. Merrey, Jr., Paterson, N. J., for the petitioners.
William M. Gross, for the respondent.
DAWSON, Judge.
DAWSON
Memorandum Findings of Fact and Opinion
DAWSON, Judge:
In these consolidated cases respondent determined the following income tax deficiencies against the petitioners:
Petitioner
Taxable Year Ended[1]
Deficiency
Plastic Toys, Inc.
Jan. 31, 1962
$3,120.00
June 30, 1962
772.66
June 30, 1963
3,647.34
Amloid Corporation
Jan. 31, 1961
3,120.00
Jan. 31, 1962
3,120.00
June 30, 1962
1,300.00
June 30, 1963
3,120.00
The only issue for decision is whether the petitioners are entitled to deduct, as interest, certain payments made on debentures and mortgage bonds held by the two corporate shareholders.
Findings of Fact
Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.
Amloid Corporation (herein called Amloid), and Plastic Toys, Inc. (herein called Plastic), both referred to collectively as petitioners, are New Jersey corporations *203 whose principal offices were located in Saddle Brook, New Jersey, at the time their petitions were filed in these proceedings.
Each of the petitioners filed its Federal income tax returns for the taxable years ended January 31, 1961, January 31, 1962, June 30, 1962, and June 30, 1963, with the district director of internal revenue, Newark, New Jersey.
Amloid was engaged in the manufacture of plastic toys, and Plastic was engaged in the business of leasing real estate machinery and equipment to Amloid. The capital stock of each corporation was owned 50 percent by Michael Albarelli (herein called Albarelli) and 50 percent by Joseph Barberia (herein called Barberia).
Petitioners are the successors to a partnership, Amloid Company (herein called the partnership), which, at all times material to these cases, was owned equally by Albarelli and Barberia.
As of February 1, 1960, the partnership discontinued operations and transferred its liabilities and certain of its assets to the petitioners who continued the same business at the same location without interruption. At the time of the transfer the partnership distributed to Albarelli and Barberia $70,503.26 in cash and $60,495 in debts which *204 the partners owed the partnership. At the same time, the partnership assets were adjusted to reflect appraised values. The partnership assets were transferred to Amloid and Plastic in the following manner:
To Amloid:
Assets: Cash
$318.48 Accounts receivable
202,136.73 Inventories
107,499.21 Prepaid expenses
2,026.00 Automotive equipment
5,632.61 Goodwill
38,162.71 Total assets
$355,775.74
Liabilities:
Notes payable
$15,000.00
Accounts payable
109,314.18
Expenses accrued
21,460.44 Total liabilities
145,774.62 Net assets
$210,001.12
To Plastic:
Assets: Prepaid expenses
$1,253.44 Land
25,500.00 Building
134,100.00 Machinery and equipment
155,340.00 Total assets
$316,193.44 Liabilities
$42,988.81 Net assets
$273,204.63
In consideration of the above transfers, Amloid issued capital stock with a stated value of $110,000 and debentures with a face value of $100,000, and Plastic issued capital stock with a stated value of $173,000 and mortgage bonds with a face value of $100,000. Albarelli and Barberia each received $55,000 of stock and $50,000 of debentures from Amloid and $86,500 of stock and $50,000 of mortgage bonds from Plastic.
The debentures issued by Amloid were in denominations of $10,000 each and in registered *205 form. Aside from providing for interest at the rate of 6 percent annually, payable on the first days of August and February of each year and for a maturity date of February 1, 1980, the debentures contained the following pertinent provisions:
[Payment shall be made] on account of the principal amount on each interest date commencing August 1, 1970 an instalment payment equal to Five Per Cent (5%) of the original principal amount hereof, until the principal amount hereof shall be paid in full, the unpaid principal amount hereof being due and payable in any event on the first day of February, 1980; * * *
* * *
The registered holders of Seventy-five per cent (75%) of the outstanding unpaid principal amount of this issue of Debentures may make an agreement in writing with the Corporation for any modification, amendment or waiver of any provision of this issue or of the rights of the registered holders hereof as a class, including postponement of the time for the payment of any interest and/or instalment on account of principal, excepting the total principal amount hereof, the interest rate, and the due date of February 1, 1980; * * *
In the event of the default by the Corporation in the payment *206 of interest or any instalment due on account of principal hereon, and at the option of the registered holder hereof in the event of any other default by the Corporation hereunder, the entire unpaid principal amount hereof shall become immediately due and payable to the same force and effect as if this Debenture had matured on its due date; provided, however, that if the Corporation shall cure any default within sixty (60) days after the event of default, this issue of Debentures shall be reinstated in the same force and effect as if the default had not occurred.
In addition, the debentures contained a covenant that Amloid would not engage in certain transactions which might dissipate the corporation's assets to the detriment of the debenture holders unless it had the consent of the holders of 75 percent in principal amount of the outstanding amount of the debentures.
The mortgage bonds issued by Plastic are dated February 1, 1960, and are due February 1, 1980; they provide for interest at the rate of 6 percent a year to be paid on the first days of August and February in each year; and they are secured by land and buildings situated in Saddle Brook, New Jersey.
On August 1, 1962, Albarelli *207 and Barberia each transferred his mortgage bond and all of his debentures to his wife as trustee for the benefit of his children. The provisions of the trust indentures were identical. Essentially all the income was for the benefit of the children with preference given to the children's educational expenses.
Both of the mortgage indentures were recorded in the County Clerk's Office, Bergen County, New Jersey, on January 18, 1961. Assignments of the mortgages to the trustees were recorded on November 8, 1963.
At all times material hereto, the interest payment on the mortgage bonds and debentures have been received and accumulated or disbursed as directed by the terms of the trust instruments. No principal payments have been made on either the mortgage bonds or debentures.
As of February 1, 1960, the real estate owned by the partnership was subject to a mortgage note payable to Community National Bank, Rochelle Park, New Jersey, in the principal amount of $42,988.81. This obligation was assumed by Plastic upon the transfer of the partnership assets to it. As of July 1, 1961, the balance on the Community Bank mortgage note had been reduced to $35,643.22. At that time, to finance the construction *208 of additional facilities, a new mortgage loan was obtained from the Community Bank in the amount of $65,000. This was the maximum amount the bank could loan to any one borrower.
Payment of the $65,000 loan was guaranteed by Albarelli, Barberia and their wives. The existing first mortgage note payable to the Community Bank was repaid out of the proceeds of the new loan, leaving a balance of $29,356.78 available for the proposed new facilities. This amount was insufficient, and, therefore, on August 31, 1961, Plastic borrowed an additional $40,000 from Amloid at 6 percent for five years and four months secured 709*709 by a mortgage junior to both the Community Bank mortgage and the mortgage bonds held by Albarelli and Barberia. Final payment on the Amloid mortgage was made on February 1, 1966, and the mortgage was discharged on February 18, 1966.
To finance the cost of a further and larger expansion of the plant owned by Plastic, a mortgage loan in the amount of $250,000 at 5 1/2 percent was obtained from Peoples Trust Company of Bergen County on November 6, 1963, and was due to mature on November 7, 1973. This mortgage note was guaranteed by Albarelli and Barberia and their wives. In *209 addition, the wives, as trustees under the trust, consented to the subordination of the original mortgage bonds to the new mortgage executed to the bank. The subordination agreements executed by each of the trustees provide, in part, as follows:
3. It is agreed and understood that as a condition for the granting of a mortgage loan in the sum of Two Hundred Fifty Thousand ($250,000.00) Dollars, by the Peoples Trust Company of Bergen County to Plastic Toys, Inc., covering property located on Fifth Street, in the Township of Saddle Brook, for a period of ten (10) years, at the rate of five and one-half (5 1/2) per cent interest, per annum, that the said Nancy Albarelli and Frances Barberia, Trustees, will postpone their rights to any and all principal payments, which enures in their favor as Trustees during the term of the said mortgage with Peoples Trust Company of Bergen County, or until the said mortgage has been paid in full.
In his notices of deficiencies respondent disallowed the interest paid on the mortgage bonds and debentures.
Opinion
One question confronts us: Do the debentures issued by Amloid and the mortgage bonds issued by Plastic to Albarelli and Barberia, their sole shareholders, *210 represent evidences of indebtedness entitling petitioners to deduct the payments made thereon as interest under section 163(a), Internal Revenue Code of 1954?[2] Although the cases are legion which involve the question of whether an investment by a shareholder in a closely-held corporation is debt or equity, usually no single element of the myriad of criteria is determinative. In the final analysis, each case must be decided on its own facts and the burden of proof is on the petitioners. John Kelley Co. v. Commissioner [46-1 USTC ¶ 9133], 326 U.S. 521 (1946); Gooding Amusement Co. v. Commissioner [56-2 USTC ¶ 9808], 236 F. 2d 159 (C. A. 6, 1956), affirming [Dec. 20,681] 23 T. C. 408 (1954); C. M. Gooch Lumber Sales Co. [Dec. 28,883], 49 T. C. 649 (1968); and Malone & Hyde, Inc. [Dec. 28,866], 49 T. C. 575 (1968). Transactions allegedly giving rise to a creditor-debtor relationship between shareholders and their controlled corporations must be closely scrutinized to ascertain if such a relationship was in fact created or if there was merely a formalized attempt to avoid taxes. Of key importance is whether "under the particular facts and circumstances, there was a reasonable expectation *211 of repayment in light of the economic realities of the situation." C. M. Gooch Lumber Sales Co., supra at p. 656.
Petitioners contend that their compliance with the formal requisites of debt objectively demonstrates their intention that the advances made by Albarelli and Barberia, in the form of the assets of the predecessor partnership, were "loans" which were to be repaid according to the terms of the instruments. Even though the debentures and mortgage bonds were conventional and unambiguous, it is well established that the incidence of taxation requires that we look to their substance rather than their form. Commissioner v. Court Holding Co. [45-1 USTC ¶ 9215], 324 U.S. 331 (1945). We agree with respondent that the substance-over-form rule has significance here since there is complete identity of interest between Albarelli and Barberia as sole shareholders and as creditors of their wholly owned corporations. Thus, in ascertaining whether there was an "expectation of repayment," a factor essential to the finding of a genuine creditor-debtor *212 relationship, we must examine all the facts and circumstances and not confine ourselves to the formal manifestations of the interested parties.
Respondent argues that the purported debt instruments, proper in form, lack substantial economic reality because (1) the apparently fixed maturity date was changed by the subsequent action of the parties, (2) the power to amend the debentures gives to the holders certain benefits enjoyed only by common stockholders, (3) the debentures and mortgage bonds are held by 710*710 the shareholders in proportion to their proprietary interests in the petitioners, (4) there has been no payment on principal, and (5) the debt instruments were not issued in exchange for any new funds but were exchanged for a proprietary interest in the predecessor partnership.
Respondent's main thrust is that the subordination agreement executed by the holders of the mortgage bonds establishes that the fixed maturity date of the debentures and mortgage bonds were rendered indefinite and that, whenever the shareholders' investor interests are in conflict with their "creditor" interests, then the investor interest must prevail. We do not agree.
The subordination agreement has *213 no application to the debentures. Respondent fails to recognize the separate identities of the debentures. He indiscriminately treats the debentures and mortgage bonds as being identical. The debentures issued by Amloid have legal and economic significance separate and apart from the mortgage bonds issued by Plastic — a fact that cannot be disregarded. Cf. Kraft Foods Co. v. Commissioner [56-1 USTC ¶ 9428], 232 F. 2d 118 (C. A. 2, 1956). The mortgage held by Peoples Trust Company is not a claim against Amloid; hence the debentures could not be subordinated to it. The personal guarantee by Albarelli and Barberia of the $250,000 loan made to Plastic does not make their claim against Amloid, as debentures holders, subordinate to the claim of Peoples Trust Company.
As to the effect of the subordination agreement on the status of the mortgage bonds, respondent seems to be moving in two directions. First, he speculates that the subordination agreement renders the fixed maturity date indefinite. He assumes that the mortgage held by Peoples Trust Company will remain outstanding for an indefinite period in the future, despite the fact that the principal is due November 1973, seven years prior *214 to the maturity date of the mortgage bonds. Second, he argues that the lack of a fixed maturity date is strong evidence that there was no intention to create a debtor-creditor relationship during the years in question because the mortgage bonds, absent a maturity date, are necessarily tied up indefinitely at the risk of the business. United States v. Title Guarantee & Trust Co. [43-1 USTC ¶ 9293], 133 F. 2d 990 (C. A. 6, 1943). This argument is unconvincing. The subordination agreement did not come into existence until after the close of the last tax year before us. Although events subsequent to the creation of the obligation may provide some evidence as to its nature, we do not view the subordination agreement entered into after the years in issue as persuasive evidence of the parties' intention. Moreover, we cannot say with any degree of certainty that the subordination agreement has the effect of rendering the fixed maturity dates of the mortgage bonds indefinite. It would be speculative for us to conclude at this time that the mortgage bond held by Peoples Trust Company will not be paid upon its maturity date of November 1973. We cannot infer, as respondent does, that Plastic will *215 always have to rely on bank credit for future business expansion. We think the continued growth of the business, as reflected by its increase in income from operations, readily supports the inference that Plastic is, and will be, financially capable of meeting all of its obligations, including the mortgage held by the Peoples Trust Company as well as the mortgage bonds held by Albarelli and Barberia.
Respondent further argues that the power to amend the debentures, coupled with the identity of interest, gives the debenture holders certain rights of common shareholders. He cites R. C. Owen Company v. Commissioner [65-2 USTC ¶ 9673], 351 F. 2d 410 (C. A. 6, 1965), affirming a Memorandum Opinion of this Court [Dec. 26,778(M)], certiorari denied 383 U.S. 967 (1966); R. C. Owen Company v. United States [60-1 USTC ¶ 9255], 180 F. Supp. 369 (Ct. Cl. 1960), certiorari denied 363 U.S. 819 (1960); and Fellinger v. United States [66-2 USTC ¶ 9586], 363 F. 2d. 826 (C. A. 6, 1966), affirming [65-1 USTC ¶ 9127] 238 F. Supp. 67 (N. D. Ohio, 1964) and a Memorandum Opinion of this Court [Dec. 26,778]. We regard each of these cases as factually distinguishable.
It is true, as respondent points out, that *216 the debentures and mortgage bonds are held by Albarelli and Barberia in proportion to their proprietary interest,[3] *217 that they were not exchanged for new funds, and that no payments have been made on principal. However, these factors are not necessarily determinative in these particular 711*711 circumstances. See, e.g., Tomlinson v. 1661 Corporation [67-1 USTC ¶ 9438], 377 F. 2d 291 (C. A. 5, 1957), and P. M. Finance Corporation v. Commissioner [62-1 USTC ¶ 9465], 302 F. 2d 786 (C. A. 3, 1962), affirming a Memorandum Opinion of this Court [Dec. 24,781(M)], where the Courts indicated that pro rata holdings of debt obligations by shareholders are not an absolute impediment to recognition of debt status; Kraft Foods Co. v. Commissioner, supra, and Lansing Community Hotel Corporation [Dec. 17,488], 14 T. C. 183 (1950); affirmed per curiam [51-1 USTC ¶ 9193] 187 F. 2d 487 (C. A. 6, 1951), which hold that valid indebtedness may be created where it is supported by funds originally part of the debtors' equity capital; and Tomlinson v. 1661 Corporation, supra, indicating that the failure to make payments to a sinking fund is not inconsistent with the creation of a debtor-creditor relationship.
In our opinion the evidence is clear that Albarelli and Barberia transferred the assets to petitioners in exchange for the debentures and mortgage bonds with the expectation that these instruments would be repaid regardless of the future success of petitioners' business. Gilbert v. Commissioner [59-1 USTC ¶ 9183], 262 F. 2d 512 (C. A. 2, 1959), affirming a Memorandum Opinion of this Court [Dec. 22,814(M)]. The instruments were in legally proper form to qualify the holders as general creditors who could share in the assets of the petitioners in the event of dissolution. The debentures and mortgage bonds contained a provision for the acceleration of principal in the event of a default in the payment of any installment. There was no subordination of either the debentures or mortgage bonds to general creditors. Tomlinson v. 1661 Corporation, supra at p. 298. Interest has been paid annually with the recipients paying taxes on such income. The instruments are carried on petitioners' books as indebtedness. The mortgage *218 bonds were recorded in the county clerk's office when they were issued and when they were transferred to the trust. Although the business prospects of petitioners were so favorable that earnings sufficient to make the payments could reasonably be expected, payment was not conditioned on earnings. See J. S. Biritz Construction Co. v. Commissioner [68-1 USTC ¶ 9118], 387 F. 2d 451 (C. A. 8, 1967). Petitioners succeeded to a highly profitable toy manufacturing business, and their operations continued to be successful during the years in issue. There is no persuasive evidence that petitioners will not be able to meet their obligations or that they will not retire the debentures and mortgage bonds in accordance with their terms. In short, the parties have done everything necessary to create a debtor-creditor relationship, and we see no valid reason to upset it.
Additionally, it is important to note that the ratio of debt to equity is not excessive for either Amloid or Plastic. In other words, there is no problem of "thin incorporation." This fact further supports our conclusion that there was, and is, a reasonable expectation of repayment. Campbell v. Carter Foundation Production Company [63-2 USTC ¶ 9711], 322 F. 2d 827 (C. A. 5, 1963). *219 Respondent does not dispute that in each case the ratio of debt to equity is approximately .9 to 1, nor does he argue the theory of thin incorporation to support his position. Petitioners were not undercapitalized; Amloid had $110,000 equity capital as opposed to $100,000 of debt, and Plastic had $173,000 equity capital with $142,988.81 of debt, at the time they succeeded to the business in February 1960. Since the debt-equity ratio is not excessive, the holders of the debentures and mortgage bonds do not need to depend upon future earnings for repayment. Instead, they can look to the underlying security represented by substantial equity capital.
Accordingly, we hold on this record that the debentures and mortgage bonds involved herein were evidences of indebtedness and that the petitioners are entitled to the deductions taken for interest paid thereon during the years in question.
Decisions will be entered for the petitioners.
Footnotes
1. The change in annual accounting periods from fiscal years ending January 31 to fiscal years ending June 30 was made with the approval of respondent.↩
2. SEC. 163. INTEREST.
(a) General Rule. — There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.↩
3. We do not regard the transfers in trust of the debentures and mortgage bonds as changing the fact that Albarelli and Barberia were still the owners in substance of these instruments.